## HICKORY CHAIR MFG. CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 4971.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1942.

Louie A. Whitener and A. A. Whitener, both of Hickory, N. C. (Manley Whitener, of Hickory, N. C., on the brief), for petitioner.

Louis Newman, Atty., National Labor Relations Board, of Washington, D. C. (Robert B. Watts, General Co., Ernest A. Gross, Associate Gen. Counsel, Gerhard P. Van Arkel, Asst. Gen. Counsel, and Joseph B. Robison and William T. Whitsett, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for respondent.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition filed by the Hickory Chair Manufacturing Company, a North Carolina corporation, with its offices, factory and principal place of business at Hickory, North Carolina. The petitioner seeks a review of an order of the National Labor Relations Board, entered in May, 1942. In its answer the respondent asks that the order be enforced.

The petitioner operates a furniture factory and had during the period involved about 670 employees. It is admitted that petitioner was engaged in interstate commerce within the meaning of the National Labor Relations Act, 49 Stat. 449, 29 U.S. C.A. § 151 et seq.

In January, 1942, upon charges filed against the petitioner by Furniture Workers, Local 2869, UBC & Joiners of America, affiliated with the A. F. of L., a complaint was issued against the petitioner alleging that it had engaged in and was engaging in unfair labor practices affecting commerce in violation of the N. L. R. Act.

The complaint alleged in substance: That petitioner referred disparagingly to the union; criticised employees because of their activity in its behalf; inquired as to its progress and threatened employees with discharge if they joined it; urged them to denounce the union and promised them a wage increase if they worked against it; that petitioner, on November 11, 1941, discharged E. C. Bolich, A. Y. Cline and G. M. Rudisill and thereafter refused to reinstate them because they formed and assisted the union and engaged in concerted activities with other employees for the purpose of collective bargaining and further alleged that petitioner interfered with, restrained, discriminated against and coerced its employees in the exercise of the right guaranteed in Section 7 of said N. L. R. Act.

An answer was filed by petitioner denying the charges in the complaint and in February, 1942, a hearing was had at Newton, North Carolina, before a trial examiner of the Board. Evidence was taken and at the conclusion of respondent's case, and at the close of all the evidence, motions to dismiss were made on behalf of the petitioner.

In May, 1942, the Board, upon considering the report of the Trial Examiner, issued

its findings of fact and conclusions of law and entered an order finding against the petitioner requiring it to cease and desist from certain unfair labor practices, and requiring the reinstatement of the three employees, E. C. Bolich, A. Y. Cline and G. M. Rudisill, who had been discharged, to their former positions and make each of them whole as to loss of pay suffered by reason of the discharge. The order also directed the posting of the usual notice and required notice to the Regional Director of the Board as to what steps the petitioner had taken to comply with the order.

The evidence in support of the complaint was to the effect that labor agitation at petitioner's plant began in June or July 1941. There was some discontent among the employees at this time concerning wages. In August, 1941, one Freeman, foreman of the cabinet room of the plant, invited three employees considered to be "Key Men" to his home to discuss the situation; that he (Freeman) told them that a union was trying to "get in" the plant and warned them to have nothing to do with it because unions were "communistic and fascistic"; that Freeman promised the three men individual wage increases and induced them to agree to co-operate in the attempt to quiet the discontent among the employees.

This evidence was denied by Freeman and two other witnesses.

In October, 1941, the agitation for the formation of a union was begun and an A. F. of L., organizer came to Hickory. On October 29, 1941, a walk out took place at the plant and work in the cabinet room was halted. Bolich, Cline and Rudisill, the three discharged employees, were active at this period working for the formation of the union. On November 7, 1941, Local No. 2869 was formed and Rudisill and Cline were elected president and vice president, respectively. On November 11, 1941, foreman Freeman informed Rudisill, Cline and Bolich that they were discharged.

Evidence on behalf of the petitioner was to the effect that it was the policy of the management of petitioner to allow its employees to join any labor organization they desired to join; that instructions had been given to the superintendent and foreman to this effect; and that Freeman, on October 29, 1941, in the presence of the organizer of the union, notified the employees that this was the policy of the company.

The only question involved is whether the Board's findings of fact are supported by substantial evidence and its order valid.

Upon conflicting evidence the Board found as a fact that the foreman, Freeman, had made the derogatory statements about unions attributed to him and that the officers of petitioner had been guilty of interference, restraint and coercion with respect to the union.

The discharge of the three employees upon flimsy pretexts strongly supports the finding of the Board.

One of these employees, E. C. Bolich, had been in petitioner's continuous employ for 15 years and had been given a wage increase within ten months prior to his discharge. The excuses given for his discharge were trivial in the extreme and the presumption that the real reason was his union activities, which must have been known to his employers, is practically conclusive.

A. Y. Cline, another of the discharged employees, had been given two wage raises in May and September, 1941. He had been in the employ of the company since 1933 and was discharged upon the pretext that he had been a few minutes late getting to his work and that his production had fallen off. He was summarily discharged four days after he had been elected vice president of the union.

G. M. Rudisill, the other of the discharged employees, worked for the company from 1932 until 1939. He was persuaded to return to the company, by the foreman Freeman in May, 1941, at an advance in wages. The reasons given for his discharge were that his work had fallen off and that he washed his hands before the whistle blew for quitting. The fact that he was discharged four days after he had been elected president of the union is significant.

The findings of the Board were supported by substantial evidence and in our opinion were correct.

We are bound by the Board's findings of fact as to matters within its jurisdiction where the findings are supported by substantial evidence. Appalachian Electric Power Co. v. N. L. R. Board, 4 Cir., 93 F.2d 985; National Labor Relations Board v. A. S. Abell Co., 4 Cir., 97 F.2d 951; Washington, Virginia & Maryland Coach Co. v. N. L. R. Board, 301 U.S. 142, 57 S.Ct. 648, 81 L.Ed. 965.

The numerous authorities cited on behalf of petitioner deal with a different state of facts from those shown here and are not controlling.

The order of the Board was valid and an order will be entered enforcing it.

Affirmed.